IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MAREIA BELL                                                                                          PLAINTIFF

v.                                    Case No. 1:15-cv-1067

AUTOZONE STORES, LLC[1]                                                                DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Defendant Autozone Stores, LLC's Motion for Summary Judgment. (ECF No. 20). Plaintiff Mareia Bell has not responded to the motion, and the time do so has passed. Also before the Court is Plaintiff's Motion to Dismiss.[2] (ECF No. 34). The Court finds the matters ripe for consideration.

**I. BACKGROUND**

This case is an employment-discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Arkansas Civil Rights Act ("ACRA"). Plaintiff is an African-American woman who previously worked for Defendant. Plaintiff alleges claims of retaliation, race and gender discrimination, and intentional infliction of emotional distress in connection with Defendant's termination of Plaintiff. Plaintiff also asserts a wage-discrimination claim under the Equal Pay Act and Arkansas' wage-discrimination law.

On March 21, 2007, Plaintiff was hired by Defendant as a part-time sales employee. In

---

[1] Defendant Autozone Stores, LLC states that it was incorrectly named in Plaintiff's complaint, and that its proper name is "Autozoners, LLC." For consistency, the Court will continue to refer to the party in this Memorandum Opinion as Autozone Stores, LLC.

[2] On March 10, 2017, Plaintiff emailed the Court, stating that she no longer wished to pursue her claims in this matter. The Court filed her email on the docket and construed it as a motion to dismiss. In light of the Court's ruling in this Memorandum Opinion, Plaintiff's motion (ECF No. 34) is hereby **DENIED AS MOOT**.

December 2008, Plaintiff was promoted to part-time parts sales manager, and on February 15, 2009, she was promoted to store manager. As a store manager, one of Plaintiff's responsibilities was to ensure that the cash from merchandise sales in her store was gathered and delivered to the bank, and that the deposit slip was verified afterwards. On April 8, 2014, management for Defendant spoke with Plaintiff regarding two deposits from Plaintiff's store. Paperwork showed that Plaintiff delivered a December 16, 2013 deposit to the bank, and that Plaintiff signed and verified the deposit slip for a January 3, 2014 deposit to the bank. However, these deposits were never delivered to the bank. In an interview with Defendant's loss-prevention personnel, Plaintiff provided a written statement that she had never allowed a non-management employee to take the store's money to the bank. Plaintiff later admitted that she had, in fact, occasionally sent non-management personnel to the bank with store deposits. On April 14, 2014, Plaintiff was terminated for violating company policy, unsatisfactory job performance, and loss of confidence.

Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 30, 2015, the EEOC sent Plaintiff a notice-of-rights letter. On October 29, 2015, Plaintiff filed this lawsuit, alleging claims of retaliation, race and gender discrimination, and intentional infliction of emotional distress in connection with Defendant's termination of Plaintiff, as well as an unequal-pay claim with respect to Plaintiff's first two years of employment with Defendant.[3]

On November 9, 2016, Defendant filed a motion for summary judgment and supporting documents (ECF Nos. 20-22), arguing that it is entitled to summary judgment on all of Plaintiff's claims. Plaintiff did not respond to the motion, and her time to do so expired on November 23, 2016. On December 20, 2016, the Court entered a Show Cause Order, giving Plaintiff fourteen

---

[3] Plaintiff began this lawsuit *pro se* and later retained counsel on May 5, 2016. On October 25, 2016, the Court granted a motion to withdraw filed by Plaintiff's attorney. (ECF No. 18).

days to either show cause why she had not responded to Defendant's summary judgment motion or to file a response to the motion. (ECF No. 24). The Show Cause Order warned Plaintiff that failure to respond to the motion could result in the Court granting summary judgment and dismissing her case. On January 5, 2017—after the expiration of the deadline set out in the Court's Show Cause Order—Plaintiff contacted the Court by email and requested additional time to find an attorney and to respond to the summary judgment motion.[4] The Court granted the motion, giving Plaintiff fourteen days to hire an attorney and thirty days to respond to the summary judgment motion. (ECF No. 30). On February 16, 2017—after the expiration of the extended deadline set out in the Court's order—Plaintiff again contacted the Court by email to state that she would be proceeding *pro se* in this matter, and to request additional time to respond to the summary judgment motion.[5] On February 22, 2017, the Court granted the motion, giving Plaintiff fourteen days to respond to Defendant's summary judgment motion.[6] (ECF No. 33). As of the date of this Memorandum Opinion, Plaintiff has not filed a response to the summary judgment motion.

Local Rule 7.2(b) of the United States District Courts for the Eastern and Western District of Arkansas provides a fourteen-day period for nonmoving parties to respond to a summary judgment motion. Local Rule 56.1(c) states that all facts asserted in the moving party's statement of facts shall be deemed admitted if they are not controverted by the nonmoving party's own statement of facts. Because Plaintiff did not respond to Defendant's

---

[4] The Court filed Plaintiff's email on the docket and construed it as a motion for an extension of time. (ECF No. 27).

[5] The Court again filed Plaintiff's email on the docket and construed it as a motion for an extension of time. (ECF No. 31).

[6] The Court's order advised Plaintiff that she would receive no further extensions of her summary judgment response deadline, and that the Court would rule on the summary judgment motion if she failed to respond to the motion on or before March 8, 2017.

summary judgment motion or deny any of Defendant's asserted facts within the Court-extended time period, all facts asserted in Defendant's statement of facts are deemed admitted for summary judgment purposes. *See Chaffin v. City of Fort Smith*, No. 05-cv-2061 JLH, 2005 WL 3805977, at *1 (W.D. Ark. Oct. 19, 2005).

## II. STANDARD

The standard for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. However, a party opposing a properly supported motion for summary judgment "may not rest upon mere

allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Accordingly, the Court applies the same summary judgment standard to discrimination cases as it does to all others.

### III.  DISCUSSION

Defendant argues that all of Plaintiff's Title VII, 42 U.S.C. § 1981, and ACRA claims fail as a matter of law, and it is therefore entitled to summary judgment.[7] The Court will examine each of Plaintiff's claims.

**A. Retaliation Claims**

Plaintiff requests that the Court enter a declaratory judgment stating, *inter alia*, that Defendant took actions "[against Plaintiff] in retaliation for . . . having exercised a protected right." (ECF No. 1). Defendant argues that Plaintiff's retaliation claim should be dismissed because Plaintiff abandoned the claim when she testified in a deposition that she was not making or pursuing a claim of retaliation against Defendant. Defendant argues in the alternative that Plaintiff's retaliation claim fails as a matter of law because she cannot establish two of the three elements required to make a *prima facie* case for retaliation. The Court agrees that Plaintiff abandoned her retaliation claim, but assuming *arguendo* that she did not, her retaliation claim nonetheless fails as a matter of law.

---

[7] Title VII, § 1981, and ACRA claims are analyzed using the same analytical framework. *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 n.2 (8th Cir. 2003) (applying the Title VII *McDonnell Douglas* burden-shifting test to § 1981 claim); *Crone v. United Parcel Serv., Inc.*, 301 F.3d 942, 945 (8th Cir. 2002) (applying the Title VII *McDonnell Douglas* burden-shifting test to ACRA claim). Therefore, the Court's analysis of Plaintiff's Title VII claims also applies to her § 1981 and ACRA claims.

5

"Title VII prohibits employers from retaliating against employees who file charges of discrimination or who assist others in opposing discrimination." *Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 818 (8th Cir. 1998). Title VII Retaliation claims are analyzed under the familiar three-stage, burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*. *Id.* To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Jackman v. Fifth Judicial District Dep't of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). Protected activity "can be either opposing an act of discrimination made unlawful by Title VII . . . or participating in an investigation under Title VII." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002). An adverse employment action is defined as a "tangible change in working conditions that produces a material employment disadvantage," and includes termination. *Jackman*, 728 F.3d at 804.

Plaintiff testified that while working for Defendant, she never complained about any discriminatory activity toward her. (ECF No. 20-1). Additionally, Plaintiff has offered no evidence that she did, in fact, engage in protected activity, or that Defendant was aware of any protected activity. As a result, she cannot satisfy the first *prima facie* element. Plaintiff satisfies the second *prima facie* element because she suffered from an adverse employment action when she was terminated by Defendant. However, in light of the fact that she cannot show that she engaged in statutorily protected activity, she also cannot satisfy the third *prima facie* element by demonstrating that a causal connection exists between her protected activity and the adverse employment action. Therefore, Plaintiff is unable to make a *prima facie* case of retaliation.

Accordingly, the undisputed facts demonstrate that Plaintiff's claims for retaliation under Title VII, 42 U.S.C. § 1981, and ACRA fail as a matter of law. The Court finds that Defendant's summary judgment motion should be granted as to Plaintiff's retaliation claims.

### B. Race and Gender Discrimination Claims

Plaintiff alleges that Defendant's decision to terminate her constituted race and gender discrimination. To succeed on either her race or gender discrimination claims, Plaintiff must show direct evidence of discrimination or evidence sufficient to create an inference of discrimination. *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016). Because Plaintiff provided no direct evidence of race or gender discrimination, she must "create[] an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (internal quotation marks omitted). Under this familiar framework, a plaintiff bears the burden of establishing a *prima facie* case of discrimination. *Id.* If the plaintiff meets this initial burden, a presumption of discrimination is created and the defendant must then "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. If the defendant meets this burden, the plaintiff must then "prove the proffered justification is merely a pretext for discrimination." *Id.*

Defendant argues that Plaintiff's race and gender discrimination claims fail as a matter of law because she cannot make a *prima facie* showing of race or gender discrimination, and even assuming that she could make such a showing, she cannot demonstrate that Defendant's offered reason for her termination was a pretext for discrimination. The Court will now apply each step of the *McDonnell Douglas* framework to these claims.

### 1. *Prima Facie* Case

As stated above, Plaintiff bears the initial *McDonnell Douglas* burden of establishing a *prima facie* case of race and gender discrimination. She must demonstrate that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was meeting her employer's legitimate job expectations; and (4) the circumstances give rise to an inference of discrimination (for example, if a similarly situated employee outside the protected class was treated differently). *Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009); *Tolen v. Ashcroft*, 377 F.3d 878, 882 (8th Cir. 2004). An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage," such as termination. *Wilkie v. Dep't of Health & Hum. Servs.*, 638 F.3d 944, 955 (8th Cir. 2011). For purposes of the fourth element, a similarly situated employee "must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1044 (8th Cir. 2007). A failure to establish just one element of a *prima facie* case defeats a Title VII discrimination claim. *Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2009).

Defendant does not argue that Plaintiff fails to satisfy the first two elements. Indeed, the Court finds that Plaintiff is a member of a protected class because she is both African American and female. Likewise, the Court finds that Plaintiff was terminated, which certainly qualifies as suffering an adverse employment action.

Defendant argues that Plaintiff cannot satisfy the third *prima facie* element by showing that she was meeting Defendant's legitimate job expectations. Plaintiff testified that, as a store manager, she was responsible for protecting Defendant's assets, including money received from merchandise sales. Plaintiff testified that she was responsible for gathering money from the

store, ensuring that the deposits of money were delivered from her store to the bank, and verifying the deposit slips showing that the money was delivered to the bank.  Defendant's policy was that only a member of management could perform these responsibilities.  Plaintiff admitted knowledge and understanding of that policy.  Plaintiff also admitted her knowledge of and understanding that non-compliance with store policies could result in termination.  On two occasions, Plaintiff filled out paperwork stating that she either delivered a deposit to the bank or signed and verified deposit slips showing that a deposit was delivered from her store to the bank.  However, the deposits of money were never actually delivered to the bank.  The undisputed facts show that Plaintiff was aware of Defendant's job expectation that she would protect Defendant's assets, and on at least two occasions, she failed to fulfill that expectation.  Accordingly, the Court finds that Plaintiff failed to satisfy the third *prima facie* element.

   Defendant also argues that Plaintiff cannot satisfy the fourth *prima facie* element by showing that the circumstances give rise to an inference of discrimination.  Specifically, Defendant states that Plaintiff cannot point to any similarly situated employees outside the protected group who were treated differently.  Plaintiff alleges that several of Defendant's stores in the district and region had missing deposits, and Defendant did not terminate the white, male store managers in those stores.  Plaintiff later testified that she could not remember the names of any of these alleged store managers.  Furthermore, Plaintiff has offered no evidence regarding these alleged store managers, such as their identities or how they were similarly situated.  Plaintiff has offered no other evidence demonstrating that the circumstances of her termination give rise to an inference of discrimination.  Thus, the Court finds that Plaintiff has failed to establish the fourth *prima facie* element.

Accordingly, the Court finds that Plaintiff cannot make a *prima facie* showing for her Title VII race and gender discrimination claims. Thus, her race and gender discrimination claims must fail.

### 2. Legitimate, Non-Discriminatory Reason and Pretext

Assuming *arguendo* that Plaintiff can overcome her *prima facie* burden, the Court will complete the *McDonell Douglas* analysis.

Defendant must "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435. This burden is a light one, as it is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). The Eighth Circuit has held that failure to follow an established company policy is a legitimate, non-discriminatory ground for action. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (citing *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003)).

Defendant states that it terminated Plaintiff after its investigation of the missing store deposits. Defendant argues that not only did Plaintiff violate a known store policy by completing paperwork showing that she deposited cash when she in fact had not, but she gave a false written statement to loss-prevention investigators saying she never sent non-management employees to the bank with the store's money, when she in fact had. The Court finds that Defendant has offered a legitimate, non-discriminatory reason for Plaintiff's termination, and thus the burden shifts back to Plaintiff to demonstrate that this reason was mere pretext for discrimination.

Plaintiff has not shown that Defendant's proffered reason is merely pretext for discrimination. Plaintiff has offered no evidence to satisfy this burden, other than her own unsupported allegations, which are insufficient by themselves to prove pretext. *See Gibson v.*

*Am. Greetings Corp.*, 670 F.3d 844, 854-55 (8th Cir. 2012); *see also Hopper v. Hallmark Cards, Inc.*, 87 F.3d 983, 988 (8th Cir. 1996) ("Although we must give [the plaintiff] the benefit of all reasonable inferences, we may not accord him the benefit of unreasonable inferences."). For this reason, the Court finds that Plaintiff has failed to prove pretext.

Accordingly, the undisputed facts demonstrate that Plaintiff's claims for race and gender discrimination under Title VII, 42 U.S.C. § 1981, or ACRA fail as a matter of law. The Court finds that Defendant's summary judgment motion should be granted as to Plaintiff's race and gender discrimination claims.

### C. Unequal-Pay Claims

Plaintiff alleges that "[d]uring the first two years of her employment," Defendant violated both the Equal Pay Act and Arkansas law by paying her less than male employees of lesser qualification or experience who performed the same or comparable work. (ECF No. 1). Defendant argues that Plaintiff's unequal-pay claims fail because they are time-barred under the applicable statutes of limitation for both the Equal Pay Act and Arkansas wage-discrimination law.

The Equal Pay Act generally prohibits employers from discriminating on the basis of sex by paying male employees higher wages than female employees for jobs "requir[ing] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999). Similarly, Arkansas law states that "[e]very employer in the state shall pay employees equal compensation for equal services, and no employer shall discriminate against any employee in the matter of wages or compensation solely on the basis of . . . sex." Ark. Code Ann. § 11-4-601(a).

The Equal Pay Act requires the commencement of a civil action within two years of the accrual of the cause of action for non-willful violations and within three years for willful

11

violations. 29 U.S.C. § 255(a). Arkansas law provides a two-year statute of limitations from the accrual of the cause of action. Ark. Code Ann. § 11-4-611(c).

Plaintiff's relevant employment with Defendant began on March 21, 2007. Plaintiff alleges that Defendant committed wage discrimination on the basis of sex for "the first two years of her employment." (ECF No. 1). Plaintiff reiterated this position during her deposition, testifying that her unequal-pay claim was limited to her payments from Defendant during 2007 and 2008 only. (ECF No. 20-1). On October 29, 2015, Plaintiff filed this lawsuit. At that time, the applicable statutes of limitations had expired under both state and federal law because Plaintiff did not file her claim within two (or three) years of the accrual of her unequal-pay cause of action.

Accordingly, Plaintiff's unequal-pay claim is time-barred under both the Equal Pay Act and Arkansas' wage-discrimination law. The Court finds that Defendant's summary judgment motion should be granted as to Plaintiff's unequal-pay claims.

### D. Outrage Claim

Plaintiff alleges that Defendant committed the Arkansas state-law tort of intentional infliction of emotional distress, also known as the tort of outrage, by carrying out allegedly discriminatory employment practices against her and by terminating her. Defendant argues that Plaintiff's outrage claim fails as a matter of law because she cannot establish any of the claim's *prima facie* elements.

To make a *prima facie* case for the Arkansas common-law tort of outrage, a plaintiff must establish the following four elements:

> (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civil community; (3) the actions of the defendant were the cause of plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Kelley v. Georgia-Pac. Corp.*, 300 F.3d 910, 912 (8th Cir. 2002) (citing *McQuay v. Guntharp*, 331 Ark. 466, 470, 963 S.W.2d 583, 585 (1998)). To determine if conduct is "extreme and outrageous," courts look at "the conduct at issue; the period of time over which the conduct took place; the relation between the plaintiff and defendant; and defendant's knowledge that plaintiff is particularly susceptible to emotional distress by reason of some physical or mental peculiarity." *Doe v. Wright*, 82 F.3d 265, 269 (8th Cir. 1996) (citing *Hamaker v. Ivy*, 51 F.3d 108, 111 (8th Cir. 1995)). A plaintiff does not meet the burden if her complaint merely describes "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Seals v. Corr. Med. Servs., Inc.*, 473 F. Supp. 2d 912, 925 (E.D. Ark. 2007) (quoting *Ingram v. Pirelli Cable Corp.*, 295 Ark. 154, 158, 747 S.W.2d 103, 105 (1988)).

"[T]he standard that a plaintiff must meet in order to satisfy the elements of outrage in Arkansas 'is an exceptionally high one.'" *Kelley*, 300 F.3d at 912 (quoting *Poindexter v. Armstrong*, 934 F. Supp. 1052, 1057 (W.D. Ark 1994)). This standard is even higher in employment cases. *See id.* (citing *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001)).

The Court finds that Plaintiff has failed to establish a claim for outrage. Plaintiff's complaint makes the conclusory argument that she is entitled to damages for intentional infliction of emotional distress in connection with Defendant's allegedly discriminatory conduct. Plaintiff testified that she was treated for anxiety, depression, and insomnia after being

13

terminated by Defendant, but was unable to say that her treating doctor identified Defendant's conduct as the cause of her ailments. (ECF No. 20-1).

Plaintiff has made no argument and presented no evidence that Defendant intended to inflict emotional distress on her or that it should have known that its conduct would cause emotional distress. She has not argued or presented evidence to show that Defendant's conduct was extreme and outrageous. Other than conclusory allegations, she has not presented evidence that Defendant's actions were the cause of her distress. Furthermore, she has not provided evidence that any emotional distress suffered was so severe that no reasonable person could be expected to endure it. Thus, Plaintiff has failed to meet any of the four required *prima facie* elements of an outrage claim.

Accordingly, the undisputed facts show that Plaintiff's outrage claim fails as a matter of law. The Court finds that Defendant's summary judgment motion should be granted as to Plaintiff's outrage claim.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 20) should be and is hereby **GRANTED**. Plaintiff's case is **DISMISSED WITH PREJUDICE**. A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 16th day of March, 2017.

/s/ Susan O. Hickey  
Susan O. Hickey  
United States District Judge